UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

YAHOO! INC.,

        Plaintiff,

    -v-

XYZ COMPANIES et al.,

        Defendants.

-------------------------------------------------------x



No.  08 Civ. 4581 (LTS)(THK)

### MEMORANDUM ORDER

      Plaintiff Yahoo! Inc. ("Plaintiff" or "Yahoo!") brings this action, asserting trademark infringement, counterfeiting, unfair competition, false designation of origin, and other related claims against Defendants Daiann Nakchan, Adebimpe F. Pogoson, Emmanuel C. Onyema, Aisha Buhari, Chinedu Mbonu, Chibuzor Mbonu, Chika Mbonu, Ausdith Investments Ltd., Chen Chien-Chang, Chen Chien-Zhou, Alamin Industrial Corp., XYZ Companies 1 - 25 and John/Jane Does 1 - 25.  The Court has jurisdiction of the claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1332(a)(1) and (2), and 28 U.S.C. §§ 1331 and 1338.  Over the course of the litigation, Plaintiff voluntarily dismissed its claims against Defendants Pogoson, Onyema, Buhari, Chen Chien-Chang, Chen Chien-Zhou and Chika Mbonu.

      Yahoo! now moves for judgment by default against remaining named Defendants Daiann Nakchan, Chinedu Mbonu, Chibuzor Mbonu, Ausdith Investments Ltd. ("Ausdith"), and Alamin Industrial Corp. ("Alamin") (collectively, the "Defendants").  For the reasons stated below, Plaintiff's motion is granted and statutory damages of $610,039,500 are awarded.

BACKGROUND

The uncontroverted allegations of the Third Amended Complaint (the "Complaint") and Plaintiff's additional proffers in support of this unopposed motion establish the following material facts. Defendants, a group of Thai and Nigerian individuals, a Nigerian corporation, and a Taiwanese corporation, have, for several years, perpetuated the Yahoo! Lottery Fraud ("Lottery Fraud"). The fraud works as follows: Defendants send hoax emails to individuals they do not know, telling them that they have won large sums of money through lotteries that the individuals have never entered. (Compl. ¶ 34.) If an individual responds to the initial email, Defendants inform him that he needs to pay a fee before he can collect his money. (Id.) The hoax emails counterfeit the Yahoo! name and Yahoo! marks in order to mislead recipients into thinking that the messages were sent or authorized by Yahoo! (Id. ¶ 35.) The hoax emails further rely on the Yahoo! name to persuade individuals to provide personal information (names, addresses, phone numbers, bank account information, etc.), which Defendants subsequently use to further a wide range of credit and identity scams. (Id. ¶ 36.) Yahoo!'s customers first brought the Lottery Fraud emails to Yahoo!'s attention in November 2006, and Yahoo! was eventually able to identify the Defendants as those responsible for the emails. (See Decl. of Carlo Catajan ¶¶ 5, 11, Apr. 28, 2011, ECF No. 112) (hereinafter "Catajan Decl.") Between December 2006 and May 2009, Yahoo! catalogued 11,660,790 hoax lottery emails that were sent through Yahoo! Mail. (Catajan Decl. ¶ 8.) After increasing numbers of Yahoo! customers began requesting clarification of Yahoo!'s role in the Lottery Fraud emails, Yahoo! posted information on the "Spam, Viruses and Other Abuse" section of its website, explaining that Yahoo! was in no way affiliated with or responsible for the hoax emails. (Compl. ¶ 47; Catajan Decl. ¶ 18.)

Yahoo! filed this action on May 16, 2008, against XYZ Companies 1 - 25 and John/Jane Does 1 - 25.  After identifying some specific perpetrators, Yahoo! filed its First Amended Complaint, naming Daiann Nakchan, Adebimpe F. Pogoson, and Emmanuel C. Onyema as additional defendants.  On March 19, 2009, Yahoo! filed a Second Amended Complaint that corrected some clerical errors but did not add claims or defendants.  Yahoo! filed its Third Amended Complaint on November 4, 2009, naming Aisha Buhari, Chinedu Mbonu, Chibuzor Mbonu, Chika Mbonu, Ausdith Investments Ltd., Chen Chien-Chang, Chen Chien-Zhou, and Alamin Industrial Corp. as additional defendants, and properly served all those defendants.  Claims against Defendants Pogoson, Onyema, Buhari, Chika Mbonu, Chen Chien-Chang, and Chen Chien-Zhou were subsequently dismissed, so that the only Defendants remaining in the action are Chinedu Mbonu, Chibuzor Mbonu, Ausdith Investments Ltd., and Alamin Industrial Corp.  To date, none of these Defendants has responded to the Complaint or otherwise appeared in this action.

<u>DISCUSSION</u>

Standard of Review

A grant of default judgment is a two-step process: first, the Clerk of Court files an entry of default against a party who "has failed to plead or otherwise defend" an action, and second, the Court, taking Plaintiff's well-pleaded allegations as true, determines whether the complaint states a claim for relief.  <u>See</u> Fed. R. Civ. P. 55(b); Fed. R. Civ. P. 8(b)(6); <u>see also</u> <u>Goga v. Zim Am. Integrated Shipping Servs</u>, No. 06 Civ. 5783(LAK)(GWG), 2009 WL 320602, at *2 (S.D.N.Y. Feb. 10, 2009).  Despite having had ample time to do so, Defendants have failed to respond to Plaintiff's complaint, and the Clerk has entered a certificate of default against each

Defendant.  Therefore, taking all the well-pleaded allegations in Plaintiff's complaint, except those relating to damages, and Plaintiff's additional uncontroverted factual proffers in support of its motion as true, the Court proceeds to the second step of the inquiry.  See Transatlantic Marine Claims Agency v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1998).

Defendants' Liability for Trademark Infringement and Violations of the CAN-SPAM Act.

A pleading must consist of "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff need not plead "detailed factual allegations," but the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal v. Ashcroft, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A pleading that asserts only "labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Id.  Here, Plaintiff's pleadings and additional proffers, taken as true, are sufficient to establish the alleged violations, making a grant of default judgment appropriate.

Plaintiff asserts the following claims: 1) trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114; 2) false designation of origin, unfair competition and passing off in violation of 15 U.S.C. § 1125(a); 3) dilution in violation of 15 U.S.C. § 1125(c); 4) violation of the CAN-SPAM Act, 15 U.S.C. § 7701, et seq.; 5) New York common law trademark infringement; 6) New York state dilution; 7) deceptive trade practices; 8) civil conspiracy; 9) violation of California's Unsolicited Commercial E-Mail Statute, Cal. Bus. & Prof. Code § 17529.5; and 10) violation of California's Anti-Phishing Statute, Cal. Bus. & Prof.

Code § 22948.2.[1]

Trademark Counterfeiting and Infringement

To establish a prima facie case for trademark infringement, a plaintiff must show: "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark [or imitation], (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' 15 U.S.C. § 1114(1)(a), (5) without the plaintiff's consent." 1-800 Contacts, Inc. v. When U.Com, Inc., 414 F.3d 400, 407 (2d Cir. 2005). Plaintiff must also show that defendants' use of the mark "is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." Id. (quoting 15 U.S.C. § 1125(a)(1)(A)).

Plaintiff's complaint and proffers are sufficient to sustain its burden with respect to Defendants' liability for trademark infringement. Plaintiff has described its registration of its name and several Yahoo! marks (Compl. ¶¶ 29-30) and has provided copies of those valid registrations. (Id. Ex. 1.) Plaintiff alleges that Defendants perpetrate lottery scams for their commercial gain by sending e-mail messages which intentionally counterfeit Yahoo!'s name and the Yahoo! marks in order to mislead recipients into thinking that they have won lotteries affiliated with Yahoo! (Compl. ¶¶ 33 - 36; Catajan Decl. Ex.2.) Plaintiff also alleges that it never consented to Defendants' use of the Yahoo! name or Yahoo! marks (id. ¶ 33), and that Defendants' use of those marks confused or deceived recipients of the Lottery Fraud emails into believing that the emails were sent by or affiliated with Yahoo! (Id. ¶¶ 42-43, 45-47.)

---

[1]     In this decision, the Court addresses claims (1), (4), and (8) and, granting the motion as to those claims, finds consideration of the other seven claims unnecessary.

The CAN-SPAM Act, 15 U.S.C. § 7701, et seq.

To establish a defendant's liability under § 7704(a) of the CAN-SPAM Act, a plaintiff must show that the defendant 1) transmitted commercial electronic mail messages; 2) to a protected computer; and 3) that those messages included header information or subject headings that were materially misleading.  15 U.S.C. §§ 7704(a)(1)-(2).  A protected computer is defined as a computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States."  18 U.S.C. § 1030(e)(2)(B) (West Supp. 2011).  Plaintiff must also show that the e-mails sent by defendant did not contain any mechanisms by which the recipient could electronically request not to receive future electronic mail messages from the defendant, and that the e-mails did not clearly identify themselves as advertisements or solicitations.  15 U.S.C. §§ 7704(a)(3), (5).

Plaintiff has alleged that Defendants initiated the transmission of numerous commercial electronic mail messages, and that the subject headings of those emails (by referencing the Yahoo! name) were likely to and actually did mislead recipients into believing that the Lottery Fraud emails were authorized by Yahoo!  (Compl. ¶¶ 78-79.)  Plaintiff has also alleged that the Yahoo! Mail servers, through which these emails passed, are computers through which e-mail transactions are received, stored and disseminated in interstate or foreign commerce or communication.  (Id. ¶ 77.)  Finally, Plaintiff has alleged that Defendants' e-mails did not include a mechanism that the recipient could use to submit a reply message requesting no further e-mails from the Defendants, and that Defendants' emails did not clearly identify themselves as advertisements or solicitations.  (Id. ¶¶ 80 - 81.)  Plaintiff has also submitted copies of several emails send by Defendants, further supporting its allegations.  (Catajan Decl.

Ex. 3.)[2]  Accordingly, Plaintiff's uncontroverted allegations and proffers are sufficient to establish that Defendants violated the CAN-SPAM Act.

### Defendants Are Jointly and Severally Liable

Plaintiffs assert that Defendants should be held jointly and severally liable as participants in a civil conspiracy under New York state common law.  To prove conspiracy under New York law, Plaintiff must show three elements: (1) a corrupt agreement; (2) an overt act in furtherance of that agreement; and (3) membership in the conspiracy by each defendant. Cofacredit v. Windsor Plumbing Supply Co., 187 F.3d 229, 240 (2d Cir. 1999).  Agreements in civil conspiracies "may be inferred from circumstantial evidence," as they are often difficult to prove through direct evidence.  Id.  The Complaint and accompanying declarations allege facts sufficient to establish that Defendants were engaged in a civil conspiracy.  The Complaint alleges that Defendants either sent or conspired with others to send the Lottery Fraud emails and that they received a portion of the financial benefits that resulted from the messages  (Compl. ¶ 52).  Plaintiff has also offered evidence of the following: 1) Chinedu and Chibuzor Mbonu are directors of Ausdith Investments Ltd. and Chinedu Mbonu owns the Ausdith bank account into which proceeds from the Lottery Fraud were deposited (Declaration of Shane M. McGee ¶¶ 6-12, Apr. 28, 2011, ECF No. 114) (hereinafter "McGee Decl."); 2) Daiann Nakchan owns a bank account into which victims of the Lottery Fraud were directed to transfer funds (McGee Decl. ¶¶ 13 - 15); 3) Alamin Industrial Corp. owns a bank account into which victims of the Lottery Fraud were directed to transfer funds (McGee Decl. ¶¶ 16 - 19); 4) money was transferred between the Ausdith and Alamin bank accounts (McGee Decl. ¶ 20); and 5) Lottery Fraud emails traced back to Alamin and Ausdith both provided winning numbers beginning with

---

[2]     This material is maintained under seal pursuant to an order of the Court.  (See docket entry no. 103.)

YBM-EBS and ending with AF. (Catajan Decl. Ex. 3; McGee Decl. Exs. 1, 4, 5.[3])  Additionally,

Plaintiff has provided the Court with copies of numerous emails, traced to Ausdith, Alamin, and

Nakchan.  Apart from minor variations in phrasing and style, the emails are strikingly similar.

(Catajan Decl. Ex. 3.)[4]  This circumstantial evidence is sufficient to support the reasonable

inference that Defendants are co-conspirators.  As such, they are jointly and severally liable for

all damages resulting from the Lottery Fraud.


Monetary Relief

   Statutory Damages Award Under 15 U.S.C. § 1117(c)

            Under 15 U.S.C. § 1117(c), a plaintiff may recover statutory damages rather than

actual damages or profits, particularly when, as here, "defendants have not provided sufficient

records of profits for a plaintiff to establish actual damages."  Nike, Inc. v. Top Brand, No. 00

Civ. 8179(KMW)(RLE), 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006), adopted by 2006

WL 2884437 (S.D.N.Y. Oct. 6, 2006); Phillip Morris USA v. A & V Minimarket, 592 F. Supp.

2d 669, 673 (S.D.N.Y. 2009) ("Section 1117(c) was enacted to address the difficulty of

calculating actual damages caused by counterfeiters.").  The court has broad discretion to award

damages as "[it] considers just," and is constrained only by the statutory maximum and

minimum.  15 U.S.C. § 1117(c)(2).  In this case, § 1117(c)(2) provides for damages of "not less

than $1,000 or more than $2,000,000 per counterfeit mark per type of goods or services sold,

---

[3]        Portions of this material are maintained under seal pursuant to an order of the Court.
         (See docket entry no. 103.)

[4]        For example, many of the Lottery Fraud emails instruct recipients to contact customer
         service representatives or prize coordinators who are described by professional titles,
         including "Professor," "Reverend," "Doctor," and "Barrister."  (Catajan Decl. Ex. 3.)

offered for sale, or distributed" in cases where infringement was willful.[5]

Plaintiff requests maximum statutory damages of either $1,000,000 or $2,000,000 for each counterfeit Yahoo! mark, depending on whether the counterfeited mark was included in an email distributed before or after October 13, 2008.

The Court first considers Plaintiff's categorization of emails. Section 1117(c) provides for damages to be awarded "per counterfeit mark per type of ... service[]" distributed. 15 U.S.C. § 1117(c)(2). Plaintiff alleges that, between December 2006[6] and October 12, 2008, Defendants distributed 134 different types of emails that included 816 violations of counterfeited Yahoo! marks and that, after October 13, 2008, Defendants distributed 146 different types of emails that included 795 violations of counterfeited Yahoo! marks.[7] (Memorandum of Law in Support of Plaintiff's Motion for Default Judgment 20, Apr. 28, 2011, ECF No. 111) (hereinafter "Plaintiff's Memo.") Characterizing each "type" of email as a separate "service," Plaintiff seeks an award of $816,000,000 ($1 million for each of 816 separate trademark violations) for the period from December 2006 through October 12, 2008, and an award of $1,590,000,000 ($2 million for each of 795 separate trademark violations) for the period from October 13, 2008

---

[5] Until October 13, 2008, the maximum statutory damages award under 15 U.S.C. § 1117(c) was $100,000, or $1,000,000 if the defendant's infringement was willful. As of October 13, 2008, the maximum statutory damages award available under § 1117 (c) increased to $200,000 and $2,000,000, respectively. *See* Prioritizing Resources and Organization for Intellectual Property Act of 2008, Pub. L. No. 110-403, 122 Stat. 4256. The Court has considered both sets of parameters in determining the appropriate award in this case, as the underlying conduct spanned the period from December 2006 to May 2009.

[6] Plaintiff proffers that its records indicate hoax lottery activity going back as far as early 2005, and that customer inquiries as to the validity of lottery communications commenced in November 2006, but bases its damages calculations on the December 2006 to October 2008 period. (Catajan Decl. ¶ 5.)

through May 2009.  Yahoo!'s categorization of email "types" is based on the use of specific

fraudulent "award" amounts and other identifiers in the various lottery emails, as well as

different Yahoo! marks or combinations of marks.  In support of its analysis, Yahoo! cites <u>Nike,</u>

<u>Inc. v. Top Brand</u>, No. 00 Civ. 8179(KMW)(RLE), 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006),

a case involving the counterfeiting of Nike's trademarks.  In that case, the court found four

different counterfeit marks and three different types of "goods" - t-shirts, fleece sweatshirts, and

polo shirts - and awarded $12 million in statutory damages ($1 million per mark multiplied by

the number of types of counterfeit goods).  <u>Nike, Inc,</u> 2006 WL 2946472  at *3.

   The Lottery Fraud emails at issue here are not so different from each other -

functionally, aesthetically, or based on content - as to support proper characterization into 280

separate types of services.  While the emails do differ in language, phrasing, layout and style,

they are all fundamentally similar in that they promote the same scheme - falsely telling

recipients that they have won a Yahoo! sponsored lottery and asking recipients to provide their

personal information and/or pay a fee in order to claim their winnings.  The differences in

phrasing and visual style of the emails are minor.  The Court therefore concludes that only one

"type" of service is at issue.

   Five counterfeit marks - Yahoo!, Yahoo! stylized, MyYahoo!, MyYahoo!

stylized, and Y! - appeared in the Fraud Lottery emails both before and after October 13, 2008.

(<u>See</u> Catajan Decl. Exs. 2-3.)  Of these five marks, the first - the Yahoo! standard character mark

- is itself the subject of five separately registered trademarks.  (Declaration of Britton Payne in

Support of Plaintiff's Motion for Default Judgment ¶¶ 3-4, Nov. 30, 2011, ECF No. 127)

(hereinafter "Payne Decl.")  Therefore, each time Defendants counterfeit the Yahoo! standard

character mark, they actually counterfeit five registered marks for the purposes of calculating

damages. See, e.g., Chanel, Inc. v. Joseph Mosseri, Case No. 2:07-cv-02619-SRC-CCC, 2008
U.S. Dist. LEXIS 111825 (D.N.J. May 20, 2008) (awarding damages per counterfeited
registration where four registrations were for the "CC" monogram and three registrations were
for the CHANEL mark). Accordingly, both before and after October 13, 2008, Defendants
counterfeited nine registered Yahoo! marks.

   The Court next considers the appropriate damage amount to be awarded per each
of these nine counterfeit marks. Courts awarding statutory damages under § 1117(c) consider
both compensatory and punitive factors, including (1) the defendants' likely profits; (2)
plaintiff's lost revenues; (3) the value of the mark; (4) whether the defendants' infringement was
willful; (5) the extent of defendants' cooperation with the court; (6) the scale of defendants'
infringement activities; and (7) the deterrent effect of the award, both on defendants and others.
Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999); Philip
Morris USA, 592 F. Supp. 2d at 673.

   The Court lacks specific information as to either Defendants' likely profits[8] or
Plaintiff's lost revenues. However, the Yahoo! trademarks are extremely well known and
internationally recognizable and, by counterfeiting those trademarks, Defendants caused
confusion among Yahoo! customers. (Compl. ¶¶ 15-31, 45-49; Catajan Decl. ¶ 18.)

Defendants' infringement was obviously willful, as the counterfeit trademarks were
identical to Yahoo's registered marks, and the structure and layout of the Lottery Fraud emails
indicate Defendants' efforts to have the fraudulent emails resemble genuine Yahoo!-affiliated
messages as closely as possible.

---

  [8]  Plaintiff alleges that over $3,000,000 was deposited into the Alamin bank account
over the past seven years, but provides no specific information as to the source of that
money or its relation to the Lottery Fraud scheme. (McGee Decl. ¶ 19.)

Defendants have never responded in this action or appeared before the Court, much less cooperated with the Court. Additionally, the scale of Defendants' infringement activities appears significant, as Defendants sent 11,660,790 emails over a period of less than three years. Finally, a large damages award would have a deterrent effect on both Defendants and other would-be perpetrators of a similar scheme. See, e.g., UMG Recordings, Inc. v. MP3.com, Inc., No. 00 Civ. 472 JSR, 2000 U.S. Dist. LEXIS 13293, at *17-18 (S.D.N.Y. Sept. 6, 2000) ("the potential for huge profits in the rapidly expanding world of the Internet is the lure . . . that will also tempt others to [break the law] if too low a level is set for the statutory damages in this case"); Verizon Cal. Inc. v. OnlineNIC, Inc., No. C 08-2832 JF (RS), 2009 WL 2706393, at *9 (N.D. Cal. Aug. 25, 2009) ("the number of domain names that infringe [Verizon's] marks has decreased substantially since the entry of the default judgment on December 19, 2008, and OnlineNIC admits that 'publicity about the massive judgment against [it] . . . gain[ed] much attention' in Asia beginning in late December 2008").

Therefore, the Court awards maximum damages of $1,000,000 per counterfeit Yahoo! mark per type of service provided, for a total award of $9,000,000 for Defendants' trademark violations prior to October 13, 2008, and $2,000,000 per counterfeit Yahoo! mark per type of service provided, for a total award of $18,000,000, for Defendants' trademark violations after October 13, 2008.

Statutory Damages under CAN-SPAM Act

Yahoo! estimates, based on a sampling analysis, that Defendants sent at least 11,660,790 Hoax Lottery Emails (an average of 383,693 per month) during the period from December 2006 through May 2009. (Catajan Dec. ¶ 10.) Treating each email as a separate violation under 15 U.S.C. § 7704(a)(1), Yahoo! seeks the maximum statutory award of $100 per

violation.  Yahoo! further argues that the award should be trebled under 15 U.S.C. §

7706(g)(3)(C)(i) because Defendants willfully and knowingly violated § 7704(a)(1), and

requests a total CAN-SPAM statutory damages award of $3,498,237,000.00.  (Plaintiff's Memo

21 - 24.)

        Exercising its broad discretion to determine an appropriate damages award, the

Court finds the maximum multi-billion dollar award requested unnecessary to address the

deterrent and punitive purposes of a statutory damages award.  The Court finds sufficient an

award of $50 per email communication, and finds trebling unnecessary in light of the size of the

resulting primary award amount.  Plaintiff will be awarded $583,039,500 ($50 for each of the

estimated 11,660,790 lottery emails sent pursuant to Defendants' scheme) in CAN-SPAM

damages.  This decision is consistent with the approach of other courts to extremely large

damage awards under the CAN-SPAM Act.  See, e.g., Facebook, Inc. v. Fisher et al., No. C 09-

05842 JF (PSG), 2011 WL 250395 (N.D. Cal. Jan 26, 2011) (awarding statutory damages of

$50.00 per violation of the CAN-SPAM Act for a total award of $360,000,000, and declining to

treble damages); Facebook, Inc. v. Wallace et al., No. C 09-798 JF (RS), 2009 WL 3617789

(N.D. Cal. Oct. 29, 2009) (awarding statutory damages of $50.00 per violation of the CAN-

SPAM Act for a total award of $710,737,650, and declining to treble damages).

    Attorneys' Fees

        The Court has discretion to award attorneys' fees in addition to statutory damages

under 15 U.S.C. § 1117(a) in "exceptional cases" - generally, those trademark infringement

cases in which infringement is willful.  See Sara Lee Corp., 36 F. Supp. 2d at 170.  Here, the

Court has found that Defendants willfully infringed Yahoo!'s trademarks.  Plaintiff is entitled to

reasonable attorneys' fees.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for judgment by default is granted.
The Clerk of Court is respectfully requested to enter judgment in favor of Plaintiff and against
Defendants Nakchan, Chinedu Mbonu, Chibuzor Mbonu, Ausdith Investments Ltd., and Alamin
Industrial Corp., jointly and severally, in the total sum of $610,039,500 (comprising a statutory
damages award of $27,000,000 under § 1117(c), and a statutory damages award of $583,039,500
under the CAN-SPAM Act).

Plaintiff must file and serve its attorneys' fees award request, supported by
detailed contemporaneous time records and relevant biographical and billing rate information,
with a courtesy copy provided for Chambers, no later than December 21, 2011. Any opposition
to the fee request must be filed, with a courtesy copy for Chambers, by January 23, 2012. Any
reply must be filed and served by February 6, 2012.

Dated: New York, New York
       December 5, 2011

LAURA TAYLOR SWAIN
United States District Judge